IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DANIL AKHMETSHIN,

      Petitioner,

           v.                                          Civil Action No. 3:26cv581

JEFFREY CRAWFORD, *et al.*,

      Respondents.

## MEMORANDUM OPINION

Petitioner, an immigration detainee currently being held in the Farmville Detention

Center ("Farmville"), filed this action pursuant to 28 U.S.C. § 2241 on June 23, 2026. (*See* ECF

Nos. 1, 2.)[1] Just two days later, he filed an "Emergency Motion for Temporary Restraining

Order, Stay of Removal, and Limited Anti-Transfer Relief" (the "Motion for a TRO") (ECF No.

3.) Although Respondents have appeared through counsel, they have not yet been directed to

respond to either the Petition or the Motion for a TRO. The Court need not wait, however, to

address Petitioner's Motion for a TRO. As discussed below, Petitioner fails to show he is

entitled to the preliminary injunctive relief he seeks. Consequently, the Motion for a TRO will

be denied.

## I. Factual and Procedural History

Petitioner, a native of Russia, "entered the United States near the southern border on or

about November 14, 2024, without being admitted or paroled by an immigration officer." (ECF

No. 1, at 5.) He was thereafter apprehended and placed into removal proceedings. (ECF No. 1,

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

at 5.)  In "early 2025," in response to Petitioner's request for a bond redetermination hearing, an Immigration Judge determined that Petitioner was detained pursuant to 8 U.S.C. § 1225(b) as an applicant for admission.  (ECF No. 1, at 5.)  On July 2, 2025, an Immigration Judge ordered Petitioner removed from the United States.  (ECF No. 1, at 5.)  Although Petitioner timely appealed, the Board of Immigration Appeals ("BIA") dismissed the appeal on March 26, 2026.  (ECF No. 1, at 5.)  On April 27, 2026, Petitioner filed a petition for review in the United States Court of Appeals for the Fifth Circuit, and this petition remains pending.  (ECF No. 1, at 5.)

In the interim between the Immigration Judge's entry of the order of removal and the BIA's dismissal of Petitioner's appeal, Petitioner sought and received "findings necessary for Special Immigrant Juvenile Status" from the Family Court of the State of New York, Kings County.  (ECF No. 1, at 5–6.)  One day after the BIA dismissed Petitioner's appeal, on March 27, 2026, Petitioner filed a Form I-360, formally seeking Special Immigrant Juvenile Status ("SIJS") from United States Citizenship and Immigration Services ("USCIS").  (ECF No. 1, at 6.)

On June 23, 2026, this Court received two petitions for writs of habeas corpus, each filed under 28 U.S.C. § 2241.  (*See* ECF Nos. 1, 2.)  The first of these documents was filed not by Petitioner, but by Diana Khon, who purports to be Petitioner's legal guardian by order of the New York State court system in the proceedings just mentioned.  (*See* ECF No. 1, at 12.)  Petitioner himself filed the second petition, using the standardized form required by this Court's Local Rules.  (*See* ECF No. 2); Loc. Civ. R. 83.4(A) (providing that "[a]ll *pro se* petitions for writs of habeas corpora must be filed on a set of standardized forms").

The two petitions request different, though overlapping, forms of relief.  The first is more expansive, requesting declarative relief in the form of a finding that Respondents have violated

2

Petitioner's rights under the Fifth Amendment to the United States Constitution[2] by detaining him for a prolonged period in violation of Petitioner's due process rights. (*See* ECF No. 1, at 12.) This petition also requests an order that Petitioner be released immediately or, in the alternative, be provided a bond hearing before an immigration judge. (ECF No. 1, at 12.) The second petition, meanwhile, seeks only an "[o]rder [that Petitioner] not be removed or transferred out of this district for any reason without the Court's permission" as well as "immediate release." (ECF No. 2, at 8.)

Just two days after the filing of his § 2241 petitions, Petitioner filed the Motion for a TRO, requesting

> a narrowly tailored order that: (1) temporarily stays his removal from the United States for fourteen days or until further order of this Court; (2) prohibits his transfer from Farmville Detention Center to Louisiana or any other out-of-district facility pending emergency review, or alternatively requires at least seventy-two hours advance written notice before any transfer or removal; (3) orders an immediate medical evaluation by qualified medical personnel; and (4) orders preservation of evidence concerning the reported use-of-force and medical-care incident at Farmville.

(ECF No. 5, at 2.) The Motion for a TRO is scant on details as to the alleged use of force; it states only that officers at Farmville utilized pepper spray, struck Petitioner in the abdomen, and forced him to the ground before handcuffing him. (ECF No. 5, at 4.)

---

[2] The Fifth Amendment to the United States Constitution provides, in pertinent part:

> No person shall . . . be deprived of life, liberty or property without due process of law.

U.S. Const. amend. V.

## II. Legal Standards for a TRO

Federal Rule of Civil Procedure 65(b) sets forth the requirements for obtaining an *ex parte* temporary restraining order. Rule 65(b) states that "the court may issue a temporary restraining order without written or oral notice to an adverse party . . . only if:"

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

Issuing a temporary restraining order without notice constitutes an extraordinary remedy. "'[T]he requirements of Rule 65(b)(1) are not merely technical niceties that a court may may easily disregard, but rather are crucial safeguards of due process.'" *Defend Arlington v. United States*, No. 1:23-cv-1730 (RDA), 2023 WL 8788956, at *5 (E.D. Va. Dec. 19, 2023) (quoting *Tchienkou v. Net Trust Mortg.*, No. 10-23, 2010 WL 2375882, at *1 (W.D. Va. June 9, 2010)). "To ensure that the rights of all concerned are protected, Rule 65(b) prescribes certain safeguards for the issuance of temporary restraining orders that must be scrupulously honored." *McKnight v. Frederick Cnty. Dep't of Soc. Servs.*, No. 5:24-cv-00088, 2024 WL 4979276, at *2 (W.D. Va. Dec. 4, 2024) (quoting Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2952 (3d ed.)). "Any temporary restraining order granted without notice must comply with the provisions of Rule 65(b) in order to assure the restrained party some measure of protection in lieu of receiving formal notice and the opportunity to participate in a hearing." *Id.* (quoting Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.)).

Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991).

4

As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by a "clear showing:" (1) that she is likely to succeed on the merits at trial; (2) that she is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008) (citations omitted).[3] Each of these four factors must be satisfied before interlocutory injunctive relief is warranted. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated and remanded on other grounds by*, 559 U.S. 1089 (2010). Petitioner, as the party seeking a temporary restraining order, bears the burden of establishing that each factor supports granting the requested relief. *Id.* at 346. The failure to show any one of the relevant factors mandates denial of relief. *Id.*

### III. Petitioner Fails to Show Entitlement to a TRO

The Motion for a TRO will be denied because Petitioner does not clear *Winter*'s first hurdle—likelihood of success on the merits. In this matter, Petitioner asserts that he is currently being held under 8 U.S.C. § 1225(b) and that his prolonged detention without provision of an individualized custody hearing violates his rights. (*See* ECF No. 5, at 7.) But this belief is mistaken. Upon the BIA's resolution of Petitioner's appeal of the Immigration Judge's order of removal, the order of removal became final, meaning Petitioner's custody is now governed by 8 U.S.C. § 1231(a), not § 1225(b). *See Johnson v. Guzman Chavez*, 594 U.S. 523, 535 (2021) (concluding that an order of removal becomes "administratively final" within the meaning of 8 U.S.C. § 1231(a)(1)(B)(i) when "the agency's review proceedings" are complete); *Lopez v.*

---

[3] "The standard for granting either a TRO or a preliminary injunction is the same." *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (citations omitted).

*Bondi*, 167 F.4th 223, 227 (4th Cir. 2026) ("When, as here, an IJ makes the initial removability decision, such an order becomes 'final' when the Board makes 'determination affirming such an order.'").[4]

Pursuant to § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(B). During this "removal period," "the Attorney General *shall* detain the alien." 8 U.S.C. § 1231(a)(2)(A) (emphasis added); *see Banoub v. Crawford*, 819 F. Supp. 3d 477, 486 (E.D. Va. 2025) ("The alien '*shall*' be detained during the removal period." (citation omitted)).

Under the statute, an individual not removed within the ninety-day removal period may be released or detained. Those who do not leave the United States or are not removed "shall be subject to supervision" pending removal. 8 U.S.C. § 1231(a)(3). Section 1231(a)(6), however, provides that certain noncitizens, including those "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6). In other words, § 1231(a)(6) permits the continued detention of an alien after the removal period expires.

Section 1231 "does not specify a time limit on how long DHS may detain an alien in the post-removal period." *Castaneda v. Perry*, 95 F.4th 750, 755–56 (4th Cir. 2024). The Supreme

---

[4] Petitioner's request for review by the Fifth Circuit does not automatically stay removal or render the order of removal non-final. *See* 8 U.S.C. § 1252(b) (governing requirements for "orders of removal" and explaining that noncitizens may "petition" for review in the appropriate court of appeals and that "[s]ervice of the petition . . . does not stay removal of an alien pending the court's decision on the petition, unless the court orders otherwise"); *Lopez-Sorto v. Garland*, 103 F.4th 242, 248 (4th Cir. 2024) ("While his petition for review was pending, however, Lopez-Sorto failed to ask for a stay of removal. So the government carried out the IJ's order mandating that Lopez-Sorto be removed from the country."). Here, where Petitioner does not allege that the Fifth Circuit issued a stay of removal and the Petition for Review submitted on his behalf makes no such request (*see* ECF No. 5-4), there is no basis for finding that a stay has been entered.

Court of the United States, however, *has*. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court recognized the "serious constitutional problem arising out of a statute that . . . permits an indefinite, perhaps permanent, deprivation of human liberty," and therefore "construe[d] [§ 1231] to contain an implicit 'reasonable time' limitation.'" *Castaneda*, 95 F.4th at 756 (quoting *Zadvydas*, 533 U.S. at 682). This period, the Supreme Court determined, is presumptively six months. *Id.* (citing *Zadvydas*, 533 U.S. at 701).

The Supreme Court, though, did not find that "every alien not removed must be released after six months." *Zadvydas*, 533 U.S. at 701. Rather, once an individual is detained for longer than six months, the presumption that detention is reasonable simply ceases to apply. At that point, "if 'the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing' or release the alien." *Castaneda*, 95 F.4th at 756 (quoting *Zadvydas*, 533 U.S. at 701); *see also Menghua Wan v. Crawford, et al.*, No. 1:13cv1473 (JCC/TRJ), 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014) ("[U]nder *Zadvydas*, an alien detained while awaiting removal cannot obtain habeas relief from continued confinement unless he meets a two prong standard. The alien must show (i) that he [or she] is being held beyond the presumptively reasonable six-month period, and (ii) that there is no significant likelihood of removal in the foreseeable future." (citation omitted)). Moreover, during the six-month period set out in *Zadvydas*, noncitizens detained under § 1231 are not entitled to a bond hearing. *See Guzman Chavez*, 594 U.S. at 526 ("We conclude that § 1231, not § 1226, governs the detention of [noncitizens] subject to . . . orders of removal, meaning those [noncitizens] are not entitled to a bond hearing").

7

Here, Petitioner has been held for roughly three months since his order of removal became final. This constitutes half of the period deemed presumptively reasonable by the Supreme Court in *Zadvydas*. Because Petitioner is seemingly not entitled to relief under *Zadvydas* and is not entitled to either a bond hearing or to be housed in a particular facility[5]—the primary forms of relief requested in the two petitions filed in this action (*see* ECF No. 1, at 12; ECF No. 2, at 8)—the Court concludes that Petitioner has not established that he is likely to succeed as to the merits of the claims set forth in his § 2241 petition. Accordingly, the Motion for a TRO (ECF No. 5) will be denied.

An appropriate Order shall issue.

Date: 7|1|26                                    /s/
Richmond, Virginia                    M. Hannah Lauck
                                             Chief United States District Judge

---

[5] As the United States Court of Appeals for the Third Circuit explained, Congress vested the Department of Homeland Security "with authority to enforce the nation's immigration laws" and that the agency therefore "'necessarily has the authority to determine the location of detention of an alien in deportation proceedings." *Calla-Collado v. Att'y Gen. of the U.S.*, 663 F.3d 680, 685 (3d Cir. 2011).

8